## Eastern Construction Company v. Back.

(Decided February 17, 1931.)

J. B. SNYDER and JAMES & HOBSON for appellant.

H. H. SMITH for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Henry Back instituted a suit against Bill Turner, Clyde Bowling, Murf Howard, and Eastern Construction Company in the Knott circuit court, alleging in his petition that the defendants owed him $292.80 for 73½ hours' work for them on a highway which they were constructing in Knott county.

The first paragraph of the joint and separate answer of Bowling, Howard, and Eastern Construction Company is a traverse of the allegations of the petition, but in the second paragraph they affirmatively allege that they never employed plaintiff or had him do any work for them and were not indebted to him in any sum or amount; that they did have a contract with the state highway commission to construct a road in Knott county, and they made a contract with their codefendant Bill Turner

506

to construct one culvert and the head walls for twenty-two pipe lines under the road at different places at the agreed price of $10 per cubic yard; that they had nothing to do with this work until same was completed; and that Turner was an independent contractor with full power and authority to control his work.

We find no reply to this answer nor any order controverting its affirmative matter of record; but, inasmuch as the case was practiced below as though it had been controverted, we shall so treat it here.

It is shown by the proof that the Eastern Construction Company had a contract to build a stretch of road in Knott county, and defendants Bowling and Howard were officers of that company; but it does not appear whether the company was a corporation or a partnership. The company let a contract to Back to build one culvert and the head walls to drain tile under the road, for which he was to receive $10 per cubic yard.

Mr. Back, testifying for himself, stated that the Eastern Construction Company had a contract to construct a highway, Mr. Bowling being the engineer in charge of the work; that he was first employed by Mr. Bowling in the spring of 1928, being employed to build culverts, head walls, and do hauling. Being asked under whom he worked and under whose supervision, he testified that after Turner got the contract he was working for him; that Turner took the contract to build the head walls and culverts at a certain price; that the company paid him up to the time Turner took the contract; that the work sued for was done after Turner took over the contract to build the culvert, and after Turner took the contract he received pay for his work from Turner. He stated that Bowling would sometimes advise them to work at some place where the work was most needed.

The following came out on cross-examination:

"Q. Who employed you to do this work for which you are suing? A. I first went to work for Mr. Bowling and he paid me for that and then I went to work for Turner.

"Q. Who hired you to work for which you are suing in this suit? A. Bill Turner.

"Q. You knew that Bill Turner had a contract from Bowling of the Eastern Construction Company? A. He told me so."

He further testified that his name was not on the pay roll of the Eastern Construction Company while he worked for Turner.

Elihu Breeding was introduced as a witness for plaintiff and testified that Bowling, Howard, and the Eastern Construction Company had the contract to build the highway, and that he worked on the job, but that he worked for Turner, having agreed with Turner on the price he was to get for working. He stated that at one time he was hauling at a certain point, and that Mr. Bowling told him to go to another place to haul rock and wait there until they finished that culvert; and, as to other hands on the culvert work, he testified that Mr. Turner told them when to come, when to go, and what to do. On cross-examination, he was asked again about Bowling directing him to go from a different place from where he was working, and he stated: "He told me to go down there and haul rock and tell the men to finish up the job down there, said to finish up and get through with it." He further stated that Bowling said he was running the job and wanted to get it finished.

Anderson Breeding, a witness introduced by the plaintiff, testified that Mr. Bowling first got him a job hauling some stone, and, being asked if he was to haul for Turner, answered: "Yes sir, he said he was going to contract to Turner and I understood that he contracted to Turner, but I hauled right on." He further stated that Mr. Bowling at times seemed to be overseeing the work and stated to the teamsters that if they needed anything he would see that they got it.

The plaintiff also introduced Bill Turner as a witness, who testified that he had a contract with the Eastern Construction Company to do the culvert work at so much per cubic yard, and when asked whether or not Mr. Bowling exercised any authority over the work or over the men in any way, he replied: "One time what Mr. Breeding was telling about, when he came down there he said Bowling sent him down there." He further testified that he fixed the price of all the men that worked for him, except some Italians, and Mr. Bowling told him they were to get $1 an hour; that he superintended the work of these Italians; and that Mr. Bowling did nothing in the way of superintendening the work. He further testified that these Italian laborers were paid by the Eastern Construction Company, but that he turned their

work in, and the agreement was that the amounts paid by the Eastern Construction Company were to be charged against him.

At the close of plaintiff's evidence, defendants moved the court to peremptorily instruct the jury to find for them; but this motion was overruled.

For the defendants, Clyde Bowling testified, and Elihu Breeding and Bill Turner were recalled as witnesses. Mr. Bowling testified that he, as a representative of the Eastern Construction Company, let the contract to Mr. Turner to do the culvert work; that he had nothing whatever to do with the employment of the men or with directing the work, except to see that the contract was complied with as to when and how the work should be done. In regard to the employment of the Italians, he stated that the highway department was making complaint about delay in completing the work, and he informed Turner of this fact and insisted that he secure more stonemasons to work on the culvert job. Turner, it seems, did not know where to secure such laborers, and Bowling told him of the Italians at Whitesburg; and suggested that since he was going there he would see them for Turner. He did see the Italians and secured their services for Turner, but he stated that neither he nor the company had anything to do with employing or paying them. The company, however, did pay them at the request of Turner and on the pay roll furnished by him, and the amount so paid was charged against Turner on his contract. He also testified that he insisted that Turner's culvert work be so conducted as to keep ahead of the work to be done by the construction company.

At the close of all the evidence, defendants Eastern Construction Company, Bowling, and Howard moved the court to give a peremptory instruction in their favor. This motion was sustained as to Bowling and Howard.

For some reason, not disclosed in the record, no trial was had as to the defendant Bill Turner.

The jury returned a verdict against the Eastern Construction Company for the full amount sued for in plaintiff's petition, and that company is here on a motion for an appeal.

It is insisted by the appellant that the court erred in refusing its motion for a directed verdict and also erred in the instructions given to the jury.

Appellant's contention that it was entitled to a peremptory instruction is based on its theory that Turner was an independent contractor. Turner, as we see from the evidence, took a contract to build the culvert and head walls at a fixed price; he employed and had control of the laborers who performed the work; and he contracted to pay them for their services. The plaintiff, himself, testified that Turner had the contract to do this work and that he was employed by Turner and not by the Eastern Construction Company. The construction company exercised no control over the men doing the work, and had no interest in it except as to the result; that is, to see that it was performed according to the terms of the contract.

In the case of Borderland Coal Co. v. Burchett, 193 Ky. 602, 237 S. W. 663, 666, this court said:

"The rule is, if the contractor furnishes his own assistance, and executes the work either entirely according to his own interests or according to plans previously given him by the person for whom the work is to be done, without being subject to the orders of the latter in respect to the details of the work, the person so engaged will be regarded as an independent contractor, and the laborers he employs will be his servants, and not the servants of the owner of the property.

"This rule is not changed by the fact that, by agreement, the person for whom the work is being done advances to the contractor pay for his employees, and actually pays them, charging the amount paid to the contractor as against the specified contract price."

In the case of Ballard & Ballard Co. v. Lee's Adm'r, 131 Ky. 412, 115 S. W. 732, 734, this court said:

"Or, as said by some of the authorities, if the owner or person having the work done engages a contractor, 'who represents the will of his employer or owner only as to the result of his work, and not as to the means by which it is accomplished,' or if the contractor 'furnishes his own assistants, and executes the work, either entirely according to his own ideas, or in accordance with the plans previously given to him by the person for whom the work is

being done, without being subject to the orders of the latter in respect to the details of the work,' the person engaged to do the work will be regarded as an independent contractor.''

In the case of Dempster Construction Co. v. Tackett, 215 Ky. 461, 285 S. W. 191, 192, it was held that where a sub-contractor was in charge of construction work and was conducting it independently of the contractor and neither the contractor nor his agents exercised any control over the work except occasional inspections to see that it was being done according to plans and specifications, such sub-contractor was an independent contractor; the court, among other things, said:

"In other words, the mere right to inspect, and require, after inspection, the work to be finished according to the requirements of the contract itself, does not change the relationship between the parties into that of merely employer and employee.''

The evidence in this case, considered on the light of the foregoing authorities and many others from this state that might be cited, leaves no escape from the conclusion that Bill Turner was an independent contractor, and therefore he alone was liable for the services rendered by Mr. Back in the construction of the culvert and head walls.

The determination of this question renders it unnecessary to consider other errors complained of by appellant.

For the reasons indicated, the motion for an appeal is sustained, and the judgment of the lower court is reversed, and this cause is remanded to the lower court for another trial and for further proceedings not inconsistent with this opinion.